A. F. JUDD & S. B. DOLE, Guardians of Irene Ii *vs.*

KUANALEWA *et al.*

EJECTMENT.  BEFORE MCCULLY, J.
MAY, 1882.

Defense of adverse possession held not proven.

A right of fishery, appurtenant to an Ili, held to belong to defendants.

DECISION OF MCCULLY, J.

The plaintiffs claim possession of a tract of land of 296 acres extent, lying on the border of the Ahupuaa of Waipio, and included in the surveyed boundary thereof and in the Royal Patent held by plaintiffs.  They also claim the fishing right to a certain tract of water, a portion of Pearl River, lying contiguous to the premises claimed.

The principal defendant is Kuanalewa (w.), the heir of Manini and Harbottle, who sets up that this parcel of land constitutes the Ili of Hanapouli, and that the fishing rights of the water tract are appurtenant to the said Ili; that this Ili was assigned by Kamehameha I. to Wm. Harbottle, the ancestor of the chief defendant here, Kuanalewa.  Harbottle was one of the body of retainers and body guard of the King, known as his Hulumanus.

There is a grant of land designated as the Iliaina of Hanapouli, to Harbottle, twenty chains in extent, a Kuleana lying within the Ahupuaa of Waipio.  But the defendants offer testimony to establish that there was a large division or

denomination of land, known from ancient times as Hanapóuli, which was what was assigned to their ancestor. It was not taken before the land commission for award, and there is no separate award or patent for it, and it is included within the surveyed and patented lines of Waipio; and they claim that they have held possession of this larger Hanapouli since a time prior to 1853. There are several Kuleanas within the premises in question upon the shore of the bay.

Now, to maintain the defendants' right in the premises against the right of the patentee, there must be a showing of a distinctly adverse, exclusive and hostile possession for twenty years.

The first circumstance to be considered is how it was that Harbottle should not have taken out an award for these premises if they had been assigned him by the King. He did take an award for the small piece called the Iliaina of Hanapouli. The inference is that he secured all that belonged to him. If he had had the same claim to the 239 acres here in question, why should he not have taken an award for it? The award to Wm. Harbottle recites that he claims his Iliaina of Hanapouli which he had received from his father, John Harbottle, who had derived it from Kamehameha I. This was awarded to him, and the description, survey and contents are included in the award as He Loi Koele at Hanapouli, of twenty chains in extent.

The inference that Harbottle did not claim any larger rights than those he received, and that he did not from that time hold adversely any other land than that he applied for and received the award of, is in itself conclusive against the defendants, unless they shall show clearly that there was such adverse holding for the time required by statute.

The defendants' ancestors, in 1856, acquired the title to the Kuleanas of Kaholohana, deceased, one of which is described as an Iliaina of Hanapouli, at Waipio, containing 2 3-10 acres, the other as a purse lot on the back of Hanapouli, containing 27-100 acre. Thus by Kuleana holdings in the midst of the

premises, the defendants had a position on the land, and a right to certain pieces of it, namely, what had been awarded as Kuleanas. The testimony as to their assertion of ownership outside of these pieces, until a recent time, is uncertain and conflicting.

The testimony of Haupu, the first witness for defendants, is to the effect that the houses were on the Kuleanas and the cultivation upon them, except perhaps the portion lately leased by defendants to Chinamen. But he says that defendants at some time cultivated potatoes, calabashes, etc., in the ravine. This may have been outside of the Kuleana limits, but is vague as to the extent and the date. It was in the reign of Kamehameha III., who died in 1854.

Naoo says there were disputes about rights of fishery; says he thinks defendants did not get award for lower Hanapouli because they neglected to go after it. Says there was no cultivation on the lower part when he was at the place. He grew up on this place and was there till 1863.

Kipi, an interested witness for defendants, testifies that Ii's cattle ran over this land because it was not fenced, and gives no distinct testimony of a possession by the defendants.

Holokaua lived at Hanapouli from 1839 to 1852, and has since visited there, owning a small Kuleana in Hanapouli. He gives no evidence of an occupation of this land as is now claimed outside of the Kuleanas.

Keaha says that the defendants occupied the Kula land back to the cliffs.

Kuanalewa, the principal defendant, says that she received tribute of sugarcane and bananas grown on Hanapouli, and not on the Kuleanas.

Kauai, a witness for plaintiffs, testifies that his house was built on these premises in 1865, by permission of Ii, who helped him build it. It still stands, and witness has sold it to Chinamen, lessees holding the land which defendants claim. He says that Harbottle and his wife lived on their Kuleanas, and their cultivation was on their Kuleanas. He says that Ii planted

the land now claimed with corn and water-melons, witness help-
ing him. He says that Kipi, who had made some claims under
defendant, worked under Ii after a certain settlement before
the District Judge, Kahaleaahu.

Witness was present at the survey of the land for claims.
Wm. Harbottle had only a few patches in upper land surveyed.
Ii was also present. Harbottle claimed that the King gave him
the fishery, and Ii said he would point out his fishery, and sent
a man who waded in the water along the line of it. This testi-
mony I shall refer to when discussing the fishery rights.

This witness says that he used the beach of these premises
as a landing when fishing outside for Ii. That he has not
known of any one cultivating this land adversely to Ii till the
Chinamen recently. All the cultivation was under Ii. The
stock on the land belonged to Ii and to natives who did Poalima
work for him. Witness had planted cane on this land on shares
with Ii.

Upon the whole testimony relating to the dry land, I find for
the plaintiffs, the holders of the title. The defendants' testi-
mony does not support such an adverse possession as, upon the
principles now frequently enunciated in this Court, establish a
prescriptive right in the defendant.

2. In regard to the fishing rights, the testimony of the
plaintiffs' witnesses as well as the defendants', shows that
Harbottle had some rights in a fishery appurtenant to his grant,
and greater than those of common Kuleana-holders and tenants
of the Konohiki. I have above cited a passage of testimony
showing that this right was conceded by John Ii, the holder of
the Ahupuaa of Waipio. This right may be supposed to have
arisen from the fact that the claim and award to Harbottle was
for an Ili Aina, as distinguished from a mere Kuleana, or a lot
which the claimant had occupied or cultivated. The assign-
ment by the King of an Ili Aina carried with it appurtenant
rights, not subservient to the Konohiki of the Ahupuaa.
Kamai, a witness for plaintiffs, says the fishery was a lele of
Hanapouli.

There is some conflict of testimony as to the extent of the water premises, although all agree that it was not a deep water fishery. A man could wade along the outer boundary. The original survey and plot made by Rev. A. Bishop, who surveyed this branch of Pearl River, as the Kai or water appurtenant to Waipio for Ioane Ii, is before me. It bears a note by the Secretary of the Land Commission, J. L. Nailiili, dated March 28th, 1855, to the effect that the Land Commission declines to award the water rights by metes and bounds, leaving them to be determined by the general law. On this map is a line drawn from a point near Loko Eo, and running to a point near Laehopu, where it intersects the line which divides the Kai of Waipio from the Kai of Waiawa, and in Mr. Bishop's handwriting the words Kai o Hanapouli.

The testimony is that Mr. Ii and Harbottle were on the ground with Mr. Bishop; that there was a discussion as to the fishery belonging to Harbottle, and that Ii pointed out a line running as this designates, which was apparently accepted by Harbottle, and the survey made accordingly. This is the most definite determination which the testimony allows, and I therefore find for the defendants the right of fishing within these limits. The point of beginning is termed Nenehopu Halaulani, and is described as two chains from the makaha of Eo, and runs to the point outside of Laehopu as designated on Mr. Bishop's plot.

I give nominal damages to the plaintiffs of $5, costs to be divided.

*S. B. Dole,* for the plaintiffs.

*F. M. Hatch,* for the defendants.

Honolulu, May 17th, 1882.